UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRY D. EAGLE,

                Plaintiff,                              Hon. Janet T. Neff

v.                                             Case No. 1:10 CV 212

PATRICK D. CANNON, et al.,

                Defendants.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Cannon, Pilarski, Zanger, Hull, and Heibeck's Motion to Dismiss. (Dkt. #16). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action **dismissed**.


## BACKGROUND

This action concerns the Randolph-Sheppard Act ("RSA" or "the Act"), 20 U.S.C. §§ 107-107f, which "establishes a voluntary federal-state program to give blind persons priority to operate vending facilities on federal property." *Sauer v. United States Dep't of Educ.*, 2010 WL 986774 at *1 (C.D. Cal., Mar. 17, 2010). The Secretary of Education is responsible for administering the Act at the federal level. At the state level, state licensing agencies, or "SLAs" are designated by the Secretary of Education to implement the program. *Id.*

The following allegations are contained in Plaintiff's Amended Complaint. (Dkt. #21). Plaintiff was previously licensed as a qualified cafeteria operator by the appropriate SLA. After

undergoing eye surgery, Plaintiff's vision improved such that he was no longer blind as defined by the RSA. In 2005, however, Plaintiff's vision deteriorated again leaving him blind as defined by the RSA.

In December 2007, Plaintiff applied to be licensed so that he could operate a cafeteria at the United States Postal Service Mail Distribution Center in Pontiac, Michigan. Defendant Constance Zanger denied Plaintiff's application. The authority to operate this particular cafeteria was instead awarded to "a blind person who was untrained in cafeteria management, and did not possess cafeteria certification as required by program rules." Plaintiff "was not given notice and an opportunity to be heard on the license denial," as required by Michigan law.

In December 2009, Plaintiff applied to be licensed so that he could operate the cafeteria within the McNamara Federal Building in Detroit, Michigan. Defendant James Hull denied Plaintiff's application. The authority to operate this particular cafeteria was instead awarded to Defendant Gary Kosch, a sighted person. Plaintiff "was not given notice and an opportunity to be heard on the license denial," as required by Michigan law.

In February 2010, Plaintiff again applied to be licensed to operate a cafeteria at the United States Postal Service Mail Distribution Center in Pontiac, Michigan. Defendant Zanger denied Plaintiff's application. The authority to operate this particular cafeteria was instead awarded to "a blind person who was untrained in cafeteria management, and did not possess cafeteria certification as required by program rules." Plaintiff "was not given notice and an opportunity to be heard on the license denial," as required by Michigan law.

Plaintiff has asserted six claims in his amended complaint as discussed in detail below. Plaintiff requests declaratory relief and monetary damages of more than two and one-half million dollars ($2,500,000.00). Defendants Cannon, Pilarski, Zanger, Hull, and Heibeck have moved to dismiss

Plaintiff's complaint on various grounds as discussed herein. While Defendants' motion is entitled a motion to dismiss, they have submitted two affidavits in support thereof. Accordingly, as explained to the parties at hearing, Defendants' motion has been converted to a motion for summary judgment, to which Plaintiff has been afforded an opportunity to respond.

## STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

As the Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545.

As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet
> that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein.  *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient

opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.        Standing

Defendants assert that Plaintiff lacks standing to bring the present action. For the following reasons, the Court disagrees.

Article III, § 2 of the United States Constitution provides that the "judicial Power" of the United States extends only to "Cases" and "Controversies." Because the terms "case" and "controversy" conceivably encompass many matters more appropriately addressed by the executive or legislative branches of government, these terms have been interpreted as referring to those "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). One element of the case or controversy requirement is that a plaintiff must establish that he has standing to pursue a particular claim. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997).

To establish standing to litigate the claims asserted in this matter, Plaintiff must satisfy three requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, he must have suffered an "injury in fact." An injury in fact is defined as "an invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*; *see also*, *Raines*, 521 U.S. at 819 (to satisfy the injury in fact requirement the alleged injury must be "legally and judicially cognizable"). Plaintiff must next establish "a causal connection between the injury and the conduct complained of." In other words, Plaintiff's injury must be "fairly. . .trace[able] to the challenged action of the defendant, and not. . .th[e] result [of] the independent action of some third party not before the court." *Id.* Plaintiff must also establish a likelihood that his injury will be "redressed by a favorable decision." *Id.* at 561.

Plaintiff alleges that his ability to operate a cafeteria in a federal building has been impaired by Defendants' actions. Such is a sufficiently "concrete and particularized" injury to confer standing. Plaintiff alleges that his injury was caused by Defendants' actions, namely their refusal to approve his applications to operate a cafeteria in a federal facility. While the Court concludes, as discussed below, that Defendants are entitled to relief in this matter, such implicates the merits of Plaintiff's claims not whether he possesses standing to assert the claims in question. Finally, Plaintiff requests money damages which would certainly redress his alleged injury. In sum, the Court finds that Plaintiff has standing to assert the claims herein.

## II.            Eleventh Amendment Immunity

Defendants assert that they are entitled to immunity from Plaintiff's claims under the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539,

-8-

545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) ("[u]nder the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

In his amended complaint, Plaintiff states that he is suing the moving Defendants in both their personal and official capacities. Accordingly, to the extent Plaintiff seeks monetary relief against Defendants in their official capacity, Defendants are entitled to immunity from such claims. However, Plaintiff's claims for declaratory relief and for monetary damages against Defendants in their personal capacity are not subject to dismissal on Eleventh Amendment grounds.

**III.**       **Count I - Violation of the Randolph-Sheppard Act**

As discussed above, Plaintiff alleges that he twice applied - without success - to operate the cafeteria at the United States Postal Service Mail Distribution Center in Pontiac, Michigan. Plaintiff asserts that on each occasion the authority to operate the cafeteria was awarded to a blind person. Plaintiff also alleges that he unsuccessfully applied to operate the cafeteria within the McNamara Federal Building in Detroit, Michigan. Plaintiff asserts that the authority to operate this cafeteria was instead awarded to Defendant Kosch, a sighted individual.

In Count I of his amended complaint, Plaintiff asserts that Defendants Zanger, Hull, Heibeck, Cannon, and Pilarski "l[i]censed and assigned untrained and uncertified sighted persons as operators of cafeterias that are clearly statutorily reserved for qualified blind persons, with a preference to those blind persons in need of employment." Plaintiff further asserts that "untrained and uncertified licensed blind persons, who were not in need of employment were assigned to operate cafeterias." Plaintiff asserts that these actions violated his rights under the Randolph-Sheppard Act.

Before addressing the merits of Plaintiff's allegations, it must be noted that the RSA is clearly designed to benefit blind *licensees*, not simply blind people in general. As the initial provision of the RSA provides:

(a)     Authorization

For the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting, **blind persons licensed under the provisions of this chapter shall be authorized to operate vending facilities on any Federal property**.

(b)     Preferences regulations; justification for limitation on operation

In authorizing the operation of vending facilities on Federal property, **priority shall be given to blind persons licensed by a State agency as provided in this chapter**; and the Secretary, through the Commissioner, shall, after consultation with the Administrator of General Services and other heads of departments, agencies, or instrumentalities of the United States in control of the maintenance, operation, and protection of Federal property, prescribe regulations designed to assure that--

(1)     the **priority under this subsection is given to such licensed blind persons** (including assignment of vending machine income pursuant to section 107d-3 of this title to achieve and protect such priority), and

(2)     wherever feasible, one or more vending facilities are established on all Federal property to the extent that any

such facility or facilities would not adversely affect the
interests of the United States.

Any limitation on the placement or operation of a vending facility based
on a finding that such placement or operation would adversely affect the
interests of the United States shall be fully justified in writing to the
Secretary, who shall determine whether such limitation is justified. A
determination made by the Secretary pursuant to this provision shall be
binding on any department, agency, or instrumentality of the United
States affected by such determination. The Secretary shall publish such
determination, along with supporting documentation, in the Federal
Register.

20 U.S.C. § 107 (emphasis added).

It is not disputed that during the time period in question Plaintiff was *not* licensed by the
relevant SLA to operate a vending facility on federal property. Defendant Zanger has submitted an
affidavit in which she asserts that from March 2007 through June 2010, she "held the position of
Business Enterprise Program Manager within the Michigan Commission for the Blind." (Dkt. #17,
Exhibit 2). Zanger asserts that "prospective operators of the Business Enterprise Program must
complete BEP Manager Training, more commonly called Vender Stand Training, before being allowed
to bid on a facility with the Business Enterprise Program." Zanger asserts that the Michigan
Commission for the Blind "covers the cost" of this training. Zanger asserts that "all former operators
who have been out of the Business Enterprise Program for three (3) years or more must complete
Vending Stand Training before being allowed to bid on a facility with the Business Enterprise
Program."[1] Zanger further asserts that Plaintiff, who has not been licensed since at least 1994, "has not
enrolled nor completed Vending Stand Training." Plaintiff neither disputes this nor introduces evidence

---

[1] Zanger's assertion in this regard is consistent with the Michigan Administrative Code, which provides that "[b]efore
reentry into the program, the licensee whose license has been revoked shall again complete the full vending facility training
program." Mich. Admin. Code r. 393.15 (2010).

to the contrary, but instead simply asserts that given his experience he should be exempt from this requirement.

With respect to his requests to operate the cafeteria at the United States Postal Service Mail Distribution Center in Pontiac, Michigan, Plaintiff concedes that the authority to operate the cafeteria in question was awarded to a blind person. And while Plaintiff alleges that such person or persons lacked certain training, he does not allege that such persons were not properly licensed by the relevant SLA. The Court fails to discern how Plaintiff can maintain a claim for relief against the Defendants for doing precisely what the RSA requires, namely giving preference to a "blind person[] licensed by a State agency." Plaintiff cannot claim preference as to the person to whom the "contract" was awarded as he was not licensed by the relevant State agency.

As for Plaintiff's claim that his request to operate the cafeteria within the McNamara Federal Building was improperly denied, the Court notes that the RSA mandates only that *licensed* blind vendors be given preference. Defendant Hull has submitted an affidavit in which he asserts that "[n]o qualified licensed blind operators bid on the facility at the McNamara Federal Building." (Dkt. #17, Exhibit 3). Hull asserts that Plaintiff's bid was "rejected as he was not a qualified licensed blind operator." Hull further asserts that "[s]ince no qualified licensed blind operators bid on the facility at the McNamara Federal Building, the Business Enterprise Program entered into a temporary agreement with Kosch Catering to operate the facility until a qualified licensed blind operator was identified." Hull asserts that a qualified licensed blind operator assumed operation of this facility in February 2010. Plaintiff has submitted no evidence to the contrary.

In sum, for the reasons discussed above, the undersigned recommends that Defendants Cannon, Pilarski, Zanger, Hull, and Heibeck are entitled to summary judgment as to the claims asserted in Count I of Plaintiff's amended complaint.

## IV.        Count II - Violation of the Rehabilitation Act

In Count II of his amended complaint, Plaintiff alleges that "sighted persons are licensed to operate program facilities without any training or certification, while blind persons are only licensed and assigned to operate program vending machines facilities and cafeterias after extensive training and certification." Plaintiff asserts that "[s]uch disparate training and licensing practices" violates section 504 of the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability. . .shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

While Plaintiff was denied the ability to operate a cafeteria in a federal facility, Plaintiff has neither alleged nor submitted evidence that such was "solely by reason of. . .his disability." Rather as discussed above, the evidence reveals that Plaintiff's requests to operate the cafeterias in question were denied because Plaintiff was not properly licensed by the relevant SLA. Moreover, there is no evidence that Plaintiff has been denied the training necessary to secure the required license "solely by reason of. . .his disability." The undersigned, therefore, recommends that Defendants Cannon, Pilarski, Zanger, Hull, and Heibeck are entitled to summary judgment as to the claims asserted in Count II of Plaintiff's amended complaint.

**V.       Count III - Due Process and Equal Protection**

As previously noted, Plaintiff asserts that each time his request for a license was rejected he was denied an opportunity to be "heard on the license denial." Plaintiff asserts that such violates his due process rights. Plaintiff further asserts that the "disparate treatment in licensing and between blind and sighted persons to operate Randolph-Sheppard program facilities" violates his right to equal protection of the law. Plaintiff's equal protection claim is premised on the allegation that sighted individuals are permitted to be licensed without first completing the same training that blind vendors are required to complete.

**A.       Due Process**

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or a constitutionally protected liberty or property interest the state must afford the individual with notice and an opportunity to be heard. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2489 (2007); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).

The Due Process Clause is not implicated by any and every deprivation of liberty or property, but instead applies only where an individual has been deprived of a *constitutionally protected* liberty or property interest. *See Brentwood Academy*, 442 F.3d at 433. The first step, therefore, in assessing whether Plaintiff suffered a violation of his procedural due process rights is to determine whether he was deprived of a constitutionally protected liberty or property interest.

A constitutionally protected liberty interest exists only in circumstances in which an individual is subjected to "freedom from restraint which, while not exceeding the sentence in such an

unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see also, Bazzetta v. McGinnis*, 430 F.3d 795, 798 (6th Cir. 2005). As the *Sandin* Court further noted, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin*, 515 U.S. at 485. Accordingly, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

With respect to property interests, the procedural protections of the Fourteenth Amendment are not implicated where an individual possesses simply "an abstract need or desire" or a "unilateral expectation" of receiving a particular item or benefit. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *see also, Bauss v. Plymouth Township*, 2007 WL 1451977 at *6 (6th Cir., May 17, 2007). Rather, the individual must "have a legitimate claim of entitlement" to the item or benefit at issue. *Gonzales*, 545 U.S. at 756; *Bauss*, 2007 WL 1451977 at *6. Moreover, an individual cannot possess a constitutionally protected property interest in an item or benefit where "government officials may grant or deny it in their discretion." *Gonzales*, 545 U.S. at 756; *Bauss*, 2007 WL 1451977 at *7.

Given the language of the RSA, it does not seem reasonable to argue that Plaintiff possesses a "legitimate claim of entitlement" to be licensed to participate in RSA programs. Rather, the ability to obtain a license to participate in an RSA program is something that "government officials may grant or deny. . .in their discretion." In this respect, the Court notes that at least one court has recognized a distinction, for due process purposes, between (1) an individual who is challenging the

denial of an application for a license to participate in RSA programs and (2) an individual who is challenging the termination of a license previously granted. The court determined that in the latter circumstance, the individual was entitled to certain procedural due process rights, but an individual in the former circumstance was not. *See Howe v. Bolger*, 1984 WL 1131 at *2 (E.D. Wisc., July 20, 1984) ("The court notes that this case does not involve an application for a license, but the de facto termination of a license. As such, the plaintiff is entitled to procedural due process rights").

The undersigned, therefore, recommends that Plaintiff's due process claims be dismissed for failure to state a claim on which relief may be granted.

B.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Accordingly, the state "cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citations omitted). In other words, where a state treats one group differently from another, so long as such does not involve fundamental rights or target a suspect class, the state's action does not violate the Equal Protection Clause "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993); *see also*, *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 530 (6th Cir. 2007) ("a state law classification that 'neither burdens a fundamental right nor targets a suspect class' will be upheld 'so long as it bears a rational relation to some legitimate end'").

Defendants do not appear to contest Plaintiff's assertion that blind and sighted operators are treated differently for purposes of participating in RSA programs, but instead assert that Plaintiff's claim fails because there exists a rational basis for the challenged distinction. As noted, challenged action is subject to rational basis review if such does not involve fundamental rights or target a suspect class. Plaintiff's allegations do not appear to implicate either category. *See, e.g., Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009) ("[i]n the equal protection context, the Supreme Court has never recognized a fundamental right to pursue a particular line of employment"); *Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1063 n.6 (6th Cir. 1984) ("performance of economic activity is not a fundamental right for purposes of equal protection analysis); *Pethtel v. Dennison*, 2008 WL 859034 at *8 (S.D. Ohio, Mar. 31, 2008) ("[n]o court has ever declared that handicapped persons constitute a suspect class for purposes of equal protection analysis").

The question, therefore, becomes whether there exists a rational basis for the classification or distinction which Plaintiff is challenging. In answering this question, the Court must be mindful of the following. The purpose or rationale underlying the challenged classification or distinction need not be articulated at the time such is articulated or enacted. Instead, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Heller*, 509 U.S. at 320; *see also*, *League of United Latin American Citizens*, 500 F.3d at 536. Moreover, Defendants "ha[ve] no obligation to produce evidence to sustain the rationality of a statutory classification," as "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320-21 (internal citations omitted); *see also*, *League of United Latin American Citizens*, 500 F.3d at 536.

As Defendant Hull asserts in his affidavit, "[n]o qualified licensed blind operators bid on the facility at the McNamara Federal Building." Hull asserts that Plaintiff's bid was "rejected as he was not a qualified licensed blind operator." Hull further asserts that "[s]ince no qualified licensed blind operators bid on the facility at the McNamara Federal Building, the Business Enterprise Program entered into a temporary agreement with Kosch Catering to operate the facility until a qualified licensed blind operator was identified." Hull asserts that a qualified licensed blind operator assumed operation of this facility in February 2010. Defendants assert that "[i]t is rational to use sighted operators, on a temporary basis, to fill vacant positions and preserve a facility until a qualified blind operator is located." The Court agrees and finds that such is consistent with the purposes of the RSA.

To the extent that Plaintiff alleges that sighted vendors are able to operate cafeterias on federal property without first undergoing the same training as blind vendors, the Court finds that it is not unreasonable to require blind vendors to undergo the training in question in return for obtaining the preference for employment guaranteed by the RSA. Accordingly, the undersigned recommends that Defendants Cannon, Pilarski, Zanger, Hull, and Heibeck are entitled to summary judgment as to the claims asserted in Count III of Plaintiff's amended complaint.

**VI.     Count V - Failure to Supervise**

In Count V of his amended complaint, Plaintiff asserts that Defendants Cannon and Pilarski "failed to instruct, supervise, control, and discipline" Defendants Zanger, Hull, Heibeck and Kosch. Plaintiff further asserts that Defendants Cannon and Pilarski "approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct" of Defendants Zanger, Hull, Heibeck and Kosch.

As is well established, liability under § 1983 cannot be based upon a theory of respondeat superior or vicarious liability, as Plaintiff must instead allege personal involvement by a particular defendant. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998); *Street v. Corrections Corp. of America*, 102 F.3d 810, 817-18 (6th Cir. 1996). To the extent, therefore, that Plaintiff seeks to impose liability on Defendants Cannon and Pilarski based on the allegation that they supervised other individuals, the undersigned recommends that such claims be dismissed for failure to state a claim on which relief may be granted.

**VII.**      **Count VI - Conspiracy**

In Count VI of his amended complaint, Plaintiff alleges that Defendants Zanger, Hull, and Kosch entered into a conspiracy by which Kosch "would take over, and in fact did assume operation of the McNamara federal building cafeteria and snack shop from a blind person, thus eliminating and depriving the Plaintiff of an opportunity to be licensed and return to the program as a qualified cafeteria certified blind person to operate the cafeteria." Plaintiff further asserts that Defendants Zanger, Heibeck, and Kosch entered into a conspiracy by which Kosch "would retain management and operational control, and in fact did operate the Michigan House of Representatives office building cafeteria, preventing the Plaintiff to be licensed and operate the cafeteria." Plaintiff asserts that both of these conspiracies violated his rights under 42 U.S.C. § 1985.

Federal law makes it unlawful for individuals to conspire "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal

privileges and immunities under the laws." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1985).  To prevail on such a claim, Plaintiff must prove the following: (1) a conspiracy; (2) for the purpose of depriving him, either directly or indirectly, of equal protection of the laws or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) that he was either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Radvansky*, 395 F.3d at 314.

As the Supreme Court has cautioned, however, "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88 1971)).  As Plaintiff has neither alleged nor submitted evidence that Defendants' actions were in any way motivated by racial or other class-based animus, he has failed to make out a violation of federal law.  Accordingly, the undersigned recommends that such claims be dismissed for failure to state a claim on which relief may be granted.

## VIII.        Count IV - State Law Claims

In Count IV of his amended complaint, Plaintiff asserts several state law claims.  While the Court *could* retain jurisdiction over Plaintiff's state law claims, the undersigned recommends that these claims be dismissed without prejudice.

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction."  Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well." *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)

(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Wojnicz v. Davis*, 2003 WL 21774162 at *3 (6th Cir., July 29, 2003) (same).  Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such without prejudice so that Plaintiff may pursue them in the appropriate state forum.

IX.         **Defendant Kosch**

Plaintiff initiated this action on March 2, 2010.  The same day, summonses were issued for all defendants.  Counsel for Defendants Cannon, Pilarski, Zanger, Hull, and Heibeck submitted an appearance on March 26, 2010.  However, Plaintiff has yet to effect service on Defendant Kosch.  In the more than eleven months since initiating this action, Plaintiff has neither requested an extension of time to effect service on Defendant Kosch nor requested the Court's assistance in effecting service on him.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint."  The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant."  If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).  Considering Plaintiff's lack of diligence, the Court recommends that Plaintiff's claims against Defendant Kosch be dismissed without prejudice for failure to timely effect service.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants Cannon, Pilarski, Zanger, Hull, and Heibeck's Motion to Dismiss,</u> (dkt. #16), be **granted**; Plaintiff's claims against Defendant Kosch be **dismissed without prejudice** for failure to timely effect service; and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  February 22, 2011                      /s/ Ellen S. Carmody_____
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge